**STATE of Minnesota, Respondent,**

v.

**Kevin George LODERMEIER, Appellant.**

No. C0–94–2423.

Supreme Court of Minnesota.

Nov. 17, 1995.

John M. Stuart, Minnesota State Public Defender, Susan K. Maki, Assistant State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Attorney General, St. Paul, Richard Arney, Washington County Attorney, Stillwater, for respondent.

## OPINION

COYNE, Justice.

The sole issue on this appeal from judgment of conviction of first-degree premeditated murder is whether there was sufficient evidence to support the jury's determination that defendant's admittedly intentional killing of his wife was also premeditated. Concluding that the evidence was sufficient to support the jury's determination, we affirm.

At the time of the killing, Saturday, March 26, 1994, defendant Kevin Lodermeier and the victim, his wife Sandra, were living in Woodbury with the children from their former marriages, Sandra's two daughters and defendant's two sons. Defendant and Sandra had agreed to purchase a new house, and closing on the purchase was scheduled for April. However, defendant and Sandra were

experiencing marital problems as the closing date approached. There was evidence adduced at trial that in the week before defendant killed her Sandra had told defendant that he was no fun any more, that she did not know if she loved him any more and that she did not care about the new house. Defendant testified that her disinterest in the new house was hard to take because it was "so beautiful." The purchase was to be funded with money from their 401(k) plans, and in preparation for the move, defendant had expended all his money to pay off bills.

One source of conflict was Sandra's social life. Sandra frequently went out at night with friends from work; she had been out at least three nights in the week before her death. Defendant was hurt by her distancing herself from him. Sandra, for her part, was frustrated by what she perceived as defendant's growing possessiveness and jealousy.

Before Sandra left the house on Friday, the evening before the defendant killed her, Sandra and defendant had what her daughter Susan called an argument about Sandra's going out with her friends from work. Later that evening, Sandra told two of her friends that she and Kevin had argued that evening. Defendant characterized it as a "discussion" rather than an argument. About 7:00 p.m., Sandra went with her friends to a karaoke club in South St. Paul. Defendant took Sandra's two daughters and their friends to a roller skating rink and, after he had eaten a solitary dinner, picked them up and brought them home by about 11:30 p.m. The elder daughter, Susan, testified that defendant had seemed "really weird" and "out of it" that evening.

After bringing the girls home, defendant went to bed, but he was still awake when one of his sons came home from work about 12:30 a.m. and when Sandra returned sometime later. Defendant and Sandra "chitchatted" a bit in the kitchen before going to bed. Defendant told her he did not like her going out so much, that he worried about her drinking habits, and that he loved her and did not want to lose her.

Defendant testified that he lay awake most of the night thinking about the deterioration of their marriage and trying to think of ways to talk to Sandra. As the night wore on he became more and more depressed. Although he was supposed to work on Saturday, defendant called his office at 6:30 a.m. and left word that he was not feeling well. Between 8:00 and 8:30 a.m. he called again and told a coworker that he had the flu and would not come in to work that morning.

The state presented evidence that at around 9:30 a.m. the children heard one or more gunshots fired and heard Sandra scream. When Sandra's daughter knocked on the couple's bedroom door, Sandra did not answer but defendant did, telling her that the noises were firecrackers and she should go away. A few minutes later both Sandra's daughter and defendant's son heard more shots. Several more minutes later defendant called 911 and told police he had shot his wife. Sandra was pronounced dead at the hospital.

Defendant claimed in his testimony at trial that he had gotten the murder weapon, a Ruger .357 magnum handgun, out of a nightstand drawer where he kept it, that he was preparing to kill himself, but that when Sandra awoke and asked him what he was doing, he impulsively shot her. In short, while admitting he intentionally killed Sandra, defendant denied that he premeditated her killing.

■ The jury, however, was not required to credit defendant's testimony. In determining defendant's mental state preceding and at the time of the killing, the jury as finder of fact was free to consider all the evidence, to determine the credibility of witnesses and the weight to be given to their testimony, and to make reasonable inferences from the evidence that it credited. *State v. Linder,* 304 N.W.2d 902, 906 (Minn.1981).

■ Premeditation is a state of mind that generally only can be inferred from circumstantial evidence. *Id.* By definition, premeditation requires that "some appreciable time"—sufficient for some reflection, planning, preparation, or determination—pass between the forming of the intent and the carrying out of the act. *State v. Moore,* 481 N.W.2d 355, 360–61 (Minn.1992).

Evidence bearing on the appropriateness of the inference of premeditation can include, among other things: evidence as to the number of times the defendant used the weapon or the number of wounds inflicted, *State v. Swain,* 269 N.W.2d 707, 713 (Minn.1978); evidence of the nature of the wounds, *Moore,* 481 N.W.2d at 361; evidence relating to the time sequence, *e.g.,* evidence of a period of time between shots, *State v. Lloyd,* 345 N.W.2d 240, 246 (Minn.1984); evidence as to motive, *State v. Webb,* 440 N.W.2d 426, 431 (Minn.1989); and evidence of the defendant's words and actions before, during and after the killing.

■ In this case there was evidence that defendant's relationship with the victim had deteriorated and that defendant was angry with her; evidence that defendant and the victim had argued the night before the killing; evidence that defendant seemed "really weird" and "out of it" to the victim's daughter that night; evidence that defendant removed the gun from its zippered case and that, contrary to defendant's testimony at trial, the gun may have been unloaded when defendant got it out of the nightstand drawer; evidence that an appreciable period of time elapsed between defendant's arming himself and his firing of the gun; evidence that defendant fired the gun four times, with a significant pause between the first shot or shots and the remaining shots; evidence that three of the shots hit the victim; evidence that two of these three shots inflicted fatal wounds, one in the abdominal area and one in the head, both wounds resulting from the gun's having been fired at close range, within two feet from the victim; and evidence that in a statement he gave to the police shortly after the killing, defendant said that he previously had thought about killing the victim.

Looking, as we must, at the evidence in the light most favorable to the guilty verdict, we conclude that there was sufficient evidence, which the jury was free to credit, supporting the jury's determination that defendant premeditated the murder. *State v. Dodis,* 314 N.W.2d 233, 237 (Minn.1982). While any one of the individual factors in this case by itself might not have justified the inference of premeditation, the combination of all of the facts clearly provided a sufficient basis to justify the jury's inferring beyond a reasonable doubt that defendant not only intended to kill the victim, as he admitted, but that defendant premeditated her death.

Affirmed.