STATE of Minnesota, Respondent,

v.

**Prince Oliver MOORE, Jr., Appellant.**

**No. A13–0004.**

Supreme Court of Minnesota.

May 14, 2014.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

## OPINION

PAGE, Justice.

Appellant Prince Oliver Moore, Jr., was found guilty after a jury trial of one count of first-degree premeditated murder in violation of Minn.Stat. § 609.185(a)(1) (2012), and one count of first-degree domestic-abuse murder in violation of Minn.Stat. § 609.185(a)(6) (2012). The trial court convicted Moore of first-degree premeditated murder and sentenced him to life in prison without the possibility of release. On appeal, Moore raises five issues: (1) whether the first-degree premeditated murder statute is unconstitutional; (2) whether the State presented sufficient evidence to support the jury's finding of premeditation; (3) whether the trial court properly instructed the jury on premeditation; (4) whether the trial court erred by allowing Moore's former wife to testify; and (5) whether the trial court erred by admitting testimony under the residual hearsay exception. Because we conclude that each of these claims is either procedurally barred, without merit, or nonprejudicial, we affirm Moore's conviction.

A grand jury indicted Moore for first-degree premeditated murder, in violation of Minn.Stat. § 609.185(a)(1), and first-degree domestic-abuse murder, in violation of Minn.Stat. § 609.185(a)(6). Moore pleaded not guilty, alleging self-defense.

At trial, the following evidence was presented. In the early morning hours of September 13, 2011, Moore called 911 to report that his wife Mauryn had attacked him with a knife while he was sleeping. Moore said that he grabbed the knife from Mauryn and stabbed her. Moore said that he did not believe Mauryn was alive. When officers arrived at the Moores' apartment, they found Mauryn's body lying in the couple's bedroom with approximately 64 sharp-force injuries. Near her body was a knife that Moore concedes likely came from the kitchen. After the officers observed cuts on Moore's chest and neck, he was transported to a hospital. Moore's treating physician testified that in his professional opinion Moore's injuries were not life threatening and it was possible that the injuries were self-inflicted.

The Hennepin County Medical Examiner's Office conducted an autopsy on Mauryn's body. The autopsy revealed that Mauryn had approximately 64 sharp-force injuries. These injuries included a 2–inch deep laceration on the front of her neck that cut her trachea, right carotid artery, right jugular vein, and esophagus. According to the medical examiner, that laceration was not a survivable wound. Mauryn also had several lacerations on her fingers and hands, which may have been defensive wounds. She had multiple stab wounds to her back, two of which had very little hemorrhage, indicating that they were likely inflicted after Mauryn had died or lost a significant amount of blood.

A neighbor of the Moores testified that he heard the Moores argue at least every week and that on the morning of the killing he heard them having an unusually serious argument. At one point, he heard what he described as a "scramble" and a female voice yell, "Stop."

Over Moore's objection, Moore's former wife testified. She testified that Moore was a jealous and controlling husband; that he did not like it when she would talk with other men or get rides to work from men; that he would get upset, which led to them arguing, which sometimes escalated to physical fights; and that he both physically and sexually abused her during their marriage. She also testified that Moore's abuse started while the couple was living in Liberia and continued after they moved to Minnesota.

Several of Mauryn's friends testified pursuant to Minn. R. Evid. 807, the residual hearsay exception. This testimony revealed that Mauryn complained that Moore was controlling and abusive, and that Mauryn wanted to leave the marriage. The testimony also disclosed that Mauryn complained that Moore hit her and she once had to go to the hospital because of the abuse. One of Mauryn's friends testified that when she and Mauryn were studying Moore would call every few minutes to check in on Mauryn. Another friend testified that Moore would stare at Mauryn through a window at Mauryn's work. Moore declined to testify in his own defense.

The trial judge—without objection from Moore—instructed the jury on first-degree premeditated murder using CRIMJIG 11.02. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 11.02 (5th ed.2006). The judge also instructed the jury on first-degree domestic-abuse murder, second-degree intentional murder, and heat-of-passion manslaughter. The jury found Moore guilty of first-degree premed-

itated murder and first-degree domestic-abuse murder. The court convicted Moore of first-degree premeditated murder and sentenced him to life imprisonment without the possibility of release.

## I.

■ To begin, Moore argues for the first time on appeal that the first-degree premeditated murder statute, Minn.Stat. § 609.185(a)(1), is unconstitutional because it infringes on an individual's right to equal protection and is void for vagueness. Specifically, Moore contends that first-degree premeditated murder and second-degree intentional murder are indistinguishable because there is no meaningful difference between intent and premeditation. Based on that contention, Moore argues that the statute is unconstitutionally vague because it fails to establish adequate standards for differentiating between premeditated murder and intentional murder. He also argues that the different punishments associated with these crimes are arbitrary and violate equal protection.

■ "The law is clear in Minnesota that the constitutionality of a statute cannot be challenged for the first time on appeal." *State v. Engholm,* 290 N.W.2d 780, 784 (Minn.1980). In *State v. Schleicher,* we explained that, because the constitutionality of a statute was not raised in the trial court, we were "procedurally barred from considering the issue." 672 N.W.2d 550, 555 (Minn.2003). In accordance with *Engholm* and *Schleicher,* we conclude that Moore's constitutional challenges to Minn. Stat. § 609.185(a)(1) are procedurally barred.[1]

---

1. Moore's constitutional arguments also fail on the merits. The statutory definition of "premeditation" set out in Minn.Stat. § 609.18 (2012) and our case law sufficiently distinguish premeditation and intent. "Pre-

meditation" is defined as "to consider, plan or prepare for, or determine to commit" an act. *Id.* We have said that a finding of premeditation requires evidence that the defendant formed the intent to kill and then

## II.

The next question presented is whether the circumstantial evidence produced at trial was sufficient to support the jury's finding of premeditation. "Premeditation is a state of mind generally proved circumstantially by drawing inferences from a defendant's words and actions in light of the totality of the circumstances." *State v. Brocks,* 587 N.W.2d 37, 42 (Minn. 1998). We apply a two-step analysis in determining whether circumstantial evidence is sufficient to support a guilty verdict. *State v. Andersen,* 784 N.W.2d 320, 329–30 (Minn.2010). The first step is to identify the circumstances proved. *Id.* at 329. The second step is to "determine whether the circumstances proved are 'consistent with guilt and inconsistent with any rational hypothesis except that of guilt.'" *State v. Palmer,* 803 N.W.2d 727, 733 (Minn.2011) (quoting *Andersen,* 784 N.W.2d at 330).

In identifying the circumstances proved, we assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict. *Andersen,* 784 N.W.2d at 329. Put differently, we "construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the defense witnesses." *State v. Tscheu,* 758 N.W.2d 849, 858 (Minn.2008). This is because the jury is in the best position to evaluate the credibility of the evidence, even in cases based on circumstantial evidence. *Andersen,* 784 N.W.2d at 329. Under the second step of

our analysis, we " 'examine independently the reasonableness of [the] inferences that might be drawn from the circumstances proved.'" *Id.* (quoting *State v. Stein,* 776 N.W.2d 709, 716 (Minn.2010) (plurality opinion)). To affirm the conviction, we must conclude that "the circumstances proved are 'consistent with guilt and inconsistent with any rational hypothesis except that of guilt,' not simply [that] the inferences that point to guilt are reasonable." *Palmer,* 803 N.W.2d at 733 (quoting *Andersen,* 784 N.W.2d at 330). " '[W]e give no deference to the fact finder's choice between reasonable inferences.'" *Andersen,* 784 N.W.2d at 329–30 (quoting *Stein,* 776 N.W.2d at 716).

Viewing the evidence in the light most favorable to the verdict, the circumstances proved here include the following. Moore was a jealous and controlling husband. Moore and Mauryn had weekly arguments that sometimes turned physical. Mauryn wanted a divorce. On the night of the killing, the couple fought for over an hour. During that argument, a downstairs neighbor heard a woman yell, "Stop." Mauryn was cut in vital areas of her body, including a 2-inch deep cut along her throat and numerous stab wounds to her chest and back. Mauryn's body was found in the couple's bedroom, but the weapon was procured from the kitchen. Moore continued to stab Mauryn after she was dead or had lost a significant amount of blood. Moore's injuries were not life threatening and were self-inflicted.[2]

deliberated on that decision. *State v. Moore,* 481 N.W.2d 355, 361 (Minn.1992). Moreover, "some appreciable time" must pass between when the defendant forms the intent to kill and when the killing takes place. *Id.* These standards ensure proper notice, help prevent discriminatory enforcement, and justify the increased punishment associated with premeditated murder. *See State v. Merrill,*

450 N.W.2d 318, 321–23 (Minn.1990) (describing the equal protection and void-for-vagueness doctrines); *State v. Ulm,* 326 N.W.2d 159, 163 (Minn.1982).

2. We acknowledge that Moore claimed that Mauryn inflicted his injuries. However, in identifying the circumstances proved, we must resolve the factual dispute regarding the source of Moore's injuries in a manner

We have recognized three categories of evidence that are relevant to an inference of premeditation—planning activity, motive, and the nature of the killing. *E.g.*, *State v. Hughes*, 749 N.W.2d 307, 313 (Minn.2008). We address each in turn and conclude that the circumstances proved are consistent with a reasonable inference that Moore premeditated Mauryn's killing and inconsistent with any rational hypothesis except that of guilt.

■ With respect to planning activity, in *State v. Merrill* we addressed a fact pattern similar to the one here. 274 N.W.2d 99, 103–04 (Minn.1978). In *Merrill*, the defendant admitted to "going into the kitchen to search for a knife, finding a knife, and then returning to the bedroom and stabbing the victim 17 times." *Id.* at 112. Merrill argued that the evidence was insufficient to support the jury's finding of premeditation. *Id.* at 111. We disagreed, concluding that Merrill's "actions in going into the kitchen [from the bedroom], obtaining the knife, returning to the bedroom, and stabbing the victim numerous times" demonstrated premeditation. *Id.* at 112.

This case presents nearly identical facts. Although Moore did not admit that he retrieved the knife from the kitchen, the circumstances proved support an inference that he did so. The knife used to kill Mauryn was one normally found in a kitchen. The kitchen was roughly 10 feet from the door to the bedroom and was separated by a hallway. Moore continued to stab Mauryn after she was dead or had lost a significant amount of blood. Moore's injuries were self-inflicted. The circumstances proved are inconsistent with a rational hypothesis that Moore grabbed the knife from Mauryn and stabbed her in self-defense and are consistent with a reason-able inference that Moore retrieved the knife from the kitchen and then returned to the bedroom where he stabbed Mauryn approximately 64 times. We conclude that the evidence of Moore's planning activity supports the jury's finding on premeditation.

■ Moore argues that there was no motive evidence that could support premeditation. While "[e]vidence of motive is unnecessary to a finding of premeditation," *Palmer*, 803 N.W.2d at 735, we note that, contrary to Moore's argument, there was evidence of motive in this case. We have found motive evidence when the "defendant's relationship with the victim had deteriorated and [the] defendant was angry with [the victim,]" including "evidence that defendant and the victim had argued the night before the killing." *State v. Lodermeier*, 539 N.W.2d 396, 398 (Minn.1995); *see also State v. Pendleton*, 759 N.W.2d 900, 910 (Minn.2009). We have also relied on the defendant's expressions of jealousy in finding premeditation. *State v. Hurd*, 819 N.W.2d 591, 601 (Minn.2012).

Here, the circumstances proved establish the following. Moore was jealous, controlling, and abusive, and Mauryn wanted a divorce. Before the murder, Moore and Mauryn argued for over an hour. This argument was more serious than normal. The anger sparked by the deterioration of the couple's relationship and Moore's jealousy provided a motive to kill, which supports the jury's premeditation determination. *See Lodermeier*, 539 N.W.2d at 398.

■ Finally, we conclude that the nature of the killing also supports the jury's finding of premeditation. In *State v. Chomnarith*, we concluded that wounds placed deliberately on vital areas of the body show premeditation. 654 N.W.2d

consistent with the jury's verdict. *See Tscheu*, 758 N.W.2d at 858.

660, 665 (Minn.2003) (holding that stab wounds puncturing a lung, penetrating a rib bone, and severing an artery support a finding of premeditation). Moreover, we have said that 40 stab wounds on the victim were probative of premeditation. *State v. Smith,* 367 N.W.2d 497, 501 (Minn. 1985). We have also observed that a prolonged, severe attack may show premeditation. *State v. Cooper,* 561 N.W.2d 175, 180 (Minn.1997); *State v. Martin,* 261 N.W.2d 341, 345 (Minn.1977) (concluding that a brutal killing, including the infliction of post-mortem wounds, supports a premeditated murder verdict).

Here, Mauryn was cut in vital areas of her body, including a 2–inch deep laceration on her neck that cut her trachea, right carotid artery, right jugular vein, and esophagus. That laceration was not survivable. Mauryn also had stab wounds to her back, resulting in two collapsed lungs. Some of the 64 wounds appear to have been inflicted after Mauryn's heart had stopped beating or she had lost a significant amount of blood, which suggests a prolonged attack. We conclude that the nature of the killing supports the jury's finding of premeditation.

In sum, the evidence of Moore's planning activity, motive, and the nature of the killing all support the jury's finding of premeditation. We therefore hold that the State presented sufficient evidence to support Moore's first-degree premeditated murder conviction.

### III.

■ Moore also argues that the trial court erred by not adequately instructing the jury on the distinction between premeditation and intent. Specifically, Moore argues that the trial court should have instructed the jury that some appreciable time must have passed between when Moore formed the intent to kill and when he killed his wife. Additionally, Moore argues that the jury was improperly instructed that "[a] premeditated decision to kill may be reached in a short period of time."

Moore did not challenge the instruction at trial or in a motion for a new trial, which ordinarily precludes appellate review. *State v. Vance,* 734 N.W.2d 650, 655 n. 3 (Minn.2007), *overruled on other grounds by State v. Fleck,* 810 N.W.2d 303, 311–12 (Minn.2012). However, an unobjected-to instruction may undergo appellate review if the instruction constitutes a plain error affecting substantial rights. Minn. R.Crim. P. 31.02.

■ Trial courts are given considerable latitude in selecting language for jury instructions. *Vance,* 734 N.W.2d at 656. When reviewing jury instructions for error, we review the instructions in their entirety to determine whether they fairly and adequately explain the law. *Id.* An instruction that materially misstates the law is erroneous. *Id.*

The trial court instructed the jury that:

Premeditation means that the defendant considered, planned, prepared for or determined to commit the act before the defendant committed it. Premeditation, being a process of the mind, is wholly subjective, and hence not always susceptible to proof by direct evidence. It may be inferred from all the circumstances surrounding the event.

It is not necessary that premeditation exist for any specific length of time. A premeditated decision to kill may be reached in a short period of time. However, an unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated.

This instruction was based on CRIMJIG 11.02. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction*

*Guides, Criminal,* CRIMJIG 11.02 (5th ed.2006).

Moore's argument that the trial court's jury instructions were erroneous is grounded in our decision in *State v. Moore,* 481 N.W.2d 355 (Minn.1992). In that decision, we observed that statements we had made in the past that premeditation may arise virtually instantaneously blurred the line between premeditation and intent. *Id.* at 360. We therefore held that the State "must always prove that, after the defendant formed the intent to kill, some appreciable time passed during which the consideration, planning, preparation or determination ... took place." *Id.* at 361. Thus, Moore argues that the trial court erred by not informing the jury that some "appreciable time" must have passed between when he formed the intent to kill his wife and when he killed her.

We rejected a similar challenge to CRIMJIG 11.02 in *State v. Goodloe,* 718 N.W.2d 413 (Minn.2006). In *Goodloe,* the defendant argued that CRIMJIG 11.02's instruction that a premeditated decision can be reached in "a short period of time" was inconsistent with our holding in *Moore.* 718 N.W.2d at 421. However, we noted in *Goodloe* that *Moore* specifically stated that its holding was consistent "with our statement in previous cases that 'premeditation requires no specific period of time for deliberation.'" *Goodloe,* 718 N.W.2d at 421 (citation omitted). We also recognized in *Goodloe* that after *Moore* we had reiterated that "a finding of premeditation does not require a specific length of time for deliberation." *Goodloe,* 718 N.W.2d at 421–22 (citing *State v. Leake,* 699 N.W.2d 312, 319 (Minn.2005), and *State v. Fields,* 679 N.W.2d 341, 348 (Minn. 2004)). Accordingly, we rejected Goodloe's argument that the trial court erred by instructing the jury that a premeditated

decision may be reached in a short period of time. *Id.* at 422.

Four years later, in *State v. Anderson,* we addressed another argument similar to *Moore's.* 789 N.W.2d 227, 240–41 (Minn. 2010). In *Anderson,* the defendant argued that the trial court erred by not instructing the jury that some appreciable time must pass between when the defendant forms the intent to kill and when the killing takes place. *Id.* at 241. Relying on *Goodloe,* we held that omission of the "some appreciable time" language was not error. *Anderson,* 789 N.W.2d at 241. Given our holdings in *Goodloe* and *Anderson,* we conclude that there was no error, much less plain error, here.

## IV.

Next, Moore argues that the trial court improperly permitted his former wife to testify about his history of abusing her both in Minnesota and in Liberia, where they lived for a time before coming to Minnesota, under Minn.Stat. § 634.20 (2012). Moore takes special exception to the trial court's ruling allowing his former wife to testify about the abuse that occurred in Liberia. At the time of Moore's trial, Minn.Stat. § 634.20 provided in part:

> Evidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

 With respect to the testimony of Moore's former wife that Moore had abused her on multiple occasions while they lived in Minnesota, our careful review of that testimony satisfies us that the testimony was properly admitted. First,

independent of its admissibility under section 634.20, the testimony was admissible to prove one of the charges alleged in this case, specifically the past pattern of domestic abuse element of first-degree domestic-abuse murder. *See* Minn.Stat. § 609.185(a)(6). Further, we are satisfied that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury; or by considerations of undue delay or waste of time. Nor was the testimony cumulative. The testimony was the only testimony on Moore's history of abusing a family member other than the victim. Moreover, we note that the trial court instructed the jury that the testimony was not being admitted to prove Moore's character or that he acted in conformity with that character when he killed Mauryn.

With respect to his former wife's testimony regarding Moore's abuse of her while they were living in Liberia, we need not decide whether any of that testimony was improperly admitted because Moore has failed to establish that the alleged error had a substantial effect on the verdict. The testimony was general in nature, and the jury was instructed that the testimony was offered for the sole purpose of providing context to Moore's relationship with his former wife while they lived in Liberia and not to prove a past pattern of domestic abuse. We presume that the jury followed that limiting instruction. *State v. Ferguson,* 581 N.W.2d 824, 835 (Minn.1998). Moreover, the evidence of Moore's guilt was strong.

In sum, the trial court did not err when it allowed Moore's former wife to testify about his history of abusing her in Minnesota. We need not decide whether the court erred when it allowed Moore's former wife to testify about his history of abusing her in Liberia because Moore has failed to establish that the alleged error had a substantial effect on the verdict.

## V.

Finally, Moore argues that the trial court erred by admitting hearsay statements from Mauryn's friends under the residual hearsay exception. *See* Minn. R. Evid. 807. During this testimony, Mauryn's friends testified that Mauryn complained that Moore was controlling and abusive, and that Mauryn was not happy in the marriage. Moore contends that there were no independent bases to find these statements trustworthy and that no evidence corroborated statements that Mauryn was abused. *See State v. Davis,* 820 N.W.2d 525, 537 (Minn.2012). He further argues that because Mauryn may have been contemplating a divorce she had a motive to exaggerate or lie.

As with Moore's claim based on his former wife's testimony about abuse that took place in Liberia, we have carefully reviewed the record and conclude that any error in the admission of the hearsay statements from Mauryn's friends was harmless. Accordingly, we do not address whether the trial court abused its discretion by admitting this testimony. *See State v. Hall,* 764 N.W.2d 837, 845–46 (Minn.2009) (concluding that the court need not address whether the trial court erred because any error was harmless).

For all of the above reasons, we affirm Moore's conviction.

Affirmed.