*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0847**

State of Minnesota,
Respondent,

vs.

John Achuil Deng,
Appellant.

**Filed March 23, 2015
Affirmed
Schellhas, Judge**

Mower County District Court
File No. 50-CR-13-2676

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Jeremy Clinefelter, Assistant County Attorney, Austin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Stauber, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Following his convictions of second-degree assault with a dangerous weapon, terroristic threats, and gross-misdemeanor domestic assault, appellant argues that his

conviction of second-degree assault is not supported by sufficient evidence and that all his convictions should be reversed because the district court failed to make findings to support its general verdicts. Alternatively, appellant argues that his case should be remanded for written findings. We affirm.

## FACTS

Austin police officers were dispatched to a domestic assault in progress on the evening of November 23, 2013. Lt. Rene Phan arrived first at the scene, where he observed a female, N.Y., breathing hard, crying, yelling, and pointing toward appellant John Deng, who was running away. Lt. Phan pursued and apprehended Deng. Lt. Phan then spoke with N.Y., who said that she and Deng resided together as a couple and had argued because Deng wanted to drive despite not having a driver's license or insurance. N.Y. said that Deng punched her in the face; pulled her hair; and grabbed a steel knife sharpener, pointed it at her, and tried to hit her with it. N.Y. said that she ran out of the residence and that Deng chased her and verbally threatened to kill her. Police located the knife sharpener in a bush outside the residence and photographed the knife sharpener, multiple hair extensions scattered throughout a room in the residence, and injuries to N.Y.'s lips.

Respondent State of Minnesota charged Deng with second-degree assault with a dangerous weapon, terroristic threats, and gross-misdemeanor domestic assault. Deng waived his right to a jury trial, and the district court found him guilty of all three charges and issued a written order that contains general findings of guilt and incorporates a

2

memorandum. The court sentenced Deng to 21 months' imprisonment for his conviction of second-degree assault with a dangerous weapon.

This appeal follows.

# D E C I S I O N

## *Sufficiency of the evidence for second-degree assault with a dangerous weapon*

The elements of second-degree assault with a dangerous weapon are (1) assault of another person (2) with a dangerous weapon. Minn. Stat. § 609.222, subd. 1 (2012). A device or instrumentality is a dangerous weapon if, "in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm." Minn. Stat. § 609.02, subd. 6 (2012). Deng argues that the evidence was insufficient to prove that he used or intended to use the knife sharpener in a manner that qualified it as a dangerous weapon.

To evaluate the sufficiency of evidence, appellate courts use the same standard of review for bench trials and jury trials. *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011). "[Appellate courts] review the evidence to determine whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a [fact-finder] could reasonably conclude that the defendant was guilty of the offense charged." *State v. Fairbanks*, 842 N.W.2d 297, 306–07 (Minn. 2014) (quotation omitted). Appellate courts undertake "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the [fact-finder] to reach the verdict which [it] did." *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted).

"[I]ntent is not usually susceptible to direct proof and must, therefore, be proved by circumstantial evidence." *State v. Schneider*, 402 N.W.2d 779, 782 (Minn. 1987). "If a conviction, or a single element of a criminal offense, is based solely on circumstantial evidence," *Fairbanks*, 842 N.W.2d at 307, "[appellate courts] apply a two-step analysis in determining whether [that] circumstantial evidence is sufficient to support a guilty verdict," *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). The first step is to "identify the circumstances proved." *Palmer*, 803 N.W.2d at 733 (quotation omitted). The second step is to "examine the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt." *Id.* (quotations omitted).

Under the first step, "[appellate courts] assume that the [fact-finder] resolved any factual disputes in a manner that is consistent with the [fact-finder]'s verdict. Put differently, [appellate courts] construe conflicting evidence in the light most favorable to the verdict . . . ." *Moore*, 846 N.W.2d at 88 (quotation and citation omitted). Under the second step, "[appellate courts] examine independently the reasonableness of the inferences that might be drawn from the circumstances proved." *Id.* (quotations omitted). "To affirm the conviction, [appellate courts] must conclude that the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt, not simply that the inferences that point to guilt are reasonable." *Id.* (quotations omitted). "[Appellate courts] give no deference to the fact finder's choice between reasonable inferences." *State v. Andersen*, 784 N.W.2d 320, 329–30 (Minn. 2010) (quotation omitted).

Deng argues that the state offered no evidence that he used, and only circumstantial evidence that he intended to use, the knife sharpener in a manner that qualified it as a dangerous weapon. He further argues that the evidence is insufficient to support his conviction because the evidence also supports "a reasonable inference that Deng intended to use the knife sharpener only to cause [N.Y.] fear of bodily harm." Deng's arguments are unavailing. N.Y. testified that Deng hit her, repeatedly said that he was going to kill her, and grabbed the knife sharpener—a long, cylindrical piece of steel. Once outside the residence, Deng continued saying that he was going to kill N.Y., but she was unsure whether Deng continued to hold the knife sharpener because he was behind her and it was dark. N.Y. called the police when she had "a little bit" of distance from Deng. Deng stopped chasing her when she told him that she was calling the police. N.Y.'s testimony was consistent with her audio-recorded statements to Lt. Phan that Deng tried to hit her with the knife sharpener, repeatedly said that he was going to kill her, and chased her.

N.Y.'s statement that Deng tried to hit her with the knife sharpener is direct evidence of Deng's actual use of the knife sharpener. *See Bernhardt v. State*, 684 N.W.2d 465, 477 n.11 (Minn. 2004) (defining "direct evidence" as "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption" (quotations omitted)). And N.Y.'s testimony that Deng repeatedly stated he was going to kill her is direct evidence of his intended use of the knife sharpener. *See State v. Silvernail*, 831 N.W.2d 594, 605 n.2 (Minn. 2013) (Stras, J., concurring in part) (observing "the critical distinction between a reasonable inference drawn from the

circumstances proved and the evaluation of the credibility of witnesses" and concluding that "when [witness] recounted [defendant]'s confession at trial, the only inference the jury needed to make was that [witness] and [defendant] were credible—an assessment that we have long vested with the jury"). This evidence, viewed in the light most favorable to the verdict, was sufficient to support a finding that Deng used or intended to use the knife sharpener in a manner calculated or likely to produce death or great bodily harm to N.Y.

Even if this court applies the heightened sufficiency standard for circumstantial evidence, Deng's argument fails. The evidence, viewed in the light most favorable to the verdict, *see Moore*, 846 N.W.2d at 88, proves the following circumstances. Deng and N.Y. argued over his intention to drive without a license or insurance. Deng slapped N.Y. in the stomach multiple times, punched her in the face, and pulled out a number of her hair extensions. Deng tried to hit N.Y. with a knife sharpener and chased her, repeatedly saying that he was going to kill her. The circumstances proved are consistent with Deng's guilt, *see id.*, because they support a rational inference that Deng intended to use the knife sharpener in a manner "calculated or likely to produce death or great bodily harm," *see* Minn. Stat. § 609.02, subd. 6. The circumstances proved are inconsistent with any rational hypothesis except that of guilt. A hypothesis that Deng intended to use the knife sharpener only to inflict fear of bodily harm on N.Y. is irrational in light of his immediately preceding assaultive acts, his attempt to hit N.Y. with the knife sharpener, his repeated statements that he was going to kill N.Y., his extended chase of N.Y., and his decision to discard the knife sharpener in the bush. Because the circumstances proved are

consistent with Deng's guilt and inconsistent with any rational hypothesis besides his guilt, the evidence was sufficient to support the verdict. *See id.*

***District court's findings on essential facts***

Deng argues that the district court failed to make findings to support its general verdicts and that this court therefore should reverse his convictions or, alternatively, remand for written findings. "In a case tried without a jury, the court, within 7 days after the completion of the trial, must make a general finding of guilty" or "not guilty." Minn. R. Crim. P. 26.01, subd. 2(a). "The court, within 7 days after making its general finding in felony and gross misdemeanor cases, must in addition make findings in writing of the essential facts." *Id.*, subd. 2(b). "An opinion or memorandum of decision filed by the court satisfies the requirement to find the essential facts if they appear in the opinion or memorandum." *Id.*, subd. 2(d). "The purpose of written findings is to aid the appellate court in its review of conviction resulting from a nonjury trial." *State v. Scarver*, 458 N.W.2d 167, 168 (Minn. App. 1990).

Here, although the district court's order does not contain written findings on the essential facts for the charges against Deng, the order indicates that the state proved each element of each charge beyond a reasonable doubt. The order further reflects that the court based its general findings of guilt on the credible testimony of N.Y. and the two testifying police officers, as well as the consistency of the testimony and its corroboration by physical evidence and recorded witness statements. Furthermore, "[i]f the court omits a finding on any issue of fact essential to sustain the general finding, it must be deemed to have made a finding consistent with the general finding." Minn. R. Crim. P. 26.01, subd.

7

2(e); *see State v. Holliday*, 745 N.W.2d 556, 562–63 (Minn. 2008) (deeming district court to have found premeditation in light of, inter alia, its general finding of guilt of first-degree premeditated murder); *State v. Slaughter*, 691 N.W.2d 70, 77 (Minn. 2005) (quoting rule 26.01, subdivision 2, and concluding that evidence in trial without jury was sufficient to prove that defendant intended to permanently deprive victim of her necklaces although district court did not specifically make that finding). The district court's order sufficiently aided us in our review of Deng's convictions, and we therefore affirm Deng's convictions.

**Affirmed.**