*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0321**

State of Minnesota,
Respondent,

vs.

Luis Fernando Escobar-Chilel,
Appellant

**Filed February 1, 2016
Affirmed
Worke, Judge**

Kandiyohi County District Court
File No. 34-CR-14-209

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Shane D. Baker, Kandiyohi County Attorney, Stephen J. Wentzell, Assistant County Attorney, Willmar, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer K. Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Worke, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant argues that the evidence was insufficient to support his attempted first-degree criminal-sexual-conduct conviction. He argues in his pro se supplemental brief

that (1) due to a language barrier, he did not understand police officers during an interview, and (2) witness statements were contradictory. We affirm.

**FACTS**

On March 1, 2014, appellant Luis Fernando Escobar-Chilel went to J.J.'s home. J.J. was home with his wife, M.R-V. and their two young daughters. The two men drank beer for a couple of hours before J.J. went to bathe. Around the same time, M.R-V. took the two girls into the couples' bedroom to lie down. Four-year-old A.A.R.[1] was not tired, so she left the bedroom.

Shortly thereafter, Escobar-Chilel and A.A.R. approached the doorway to the bedroom, and A.A.R. asked her mother for water. M.R-V. saw that A.A.R.'s pants were unbuttoned and unzipped. This concerned M.R-V., so she got up and looked for A.A.R. but did not see Escobar-Chilel or A.A.R. in the living room or kitchen. M.R-V. went into the girls' room, opened the closet door, and found Escobar-Chilel and A.A.R.

When M.R-V. opened the closet door, Escobar-Chilel's face got red. His pants were unbuttoned and unzipped, and A.A.R. was naked from the waist down. M.R-V. asked Escobar-Chilel what he was doing, and he said that nothing happened. M.R-V. shoved Escobar-Chilel and took A.A.R. out of the room. She told J.J. what happened, and he called the police.

Detective Chad Nelson interviewed Escobar-Chilel on March 5, 2014, through a Spanish interpreter. Escobar-Chilel is from Guatemala and speaks Spanish and "Mam," a Mayan dialect. Escobar-Chilel confirmed that despite the dialect difference, he and the

_____

[1] DOB: March 5, 2009.

2

interpreter understood each other. The officer read the *Miranda* advisory to Escobar-Chilel. Escobar-Chilel indicated that he understood his rights and wanted to talk to the officer.

Escobar-Chilel admitted that when M.R-V. opened the closet door he was pulling his pants down. He stated that he had only touched A.A.R. on her waist, and that nothing else happened because M.R-V. opened the door. Escobar-Chilel stated that he did not know what would have happened if M.R-V. did not open the door, but that he "was gonna create a bigger mistake." Detective Nelson asked Escobar-Chilel if he was going to "have sex with [A.A.R.]," and Escobar-Chilel replied, "I think so[,] yeah."

On October 21, 2014, the district court held a bench trial. The district court heard testimony from M.R-V., J.J., the officer who took the initial report, Detective Nelson, and the Spanish interpreter from the March 5 interview. The district court found Escobar-Chilel guilty of attempted first-degree criminal sexual conduct. This appeal follows.

## D E C I S I O N

### *Sufficiency of the evidence*

Escobar-Chilel argues that the evidence does not support his conviction of attempted first-degree criminal sexual conduct. "Whe[n] there is a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the verdict to determine if the evidence was sufficient to permit the [fact-finder] to reach the verdict it did." *State v. Ford*, 539 N.W.2d 214, 225 (Minn. 1995). We assume that the fact-finder believed the state's witnesses and disbelieved contrary evidence. *State v. Huss*, 506 N.W.2d 290, 292 (Minn. 1993).

3

Escobar-Chilel's conviction was based on direct and circumstantial evidence. When a fact-finder considered circumstantial evidence, we apply a heightened standard of review. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013). This standard includes a two-step analysis to determine whether the evidence was sufficient to support the conviction. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). First, this court "identif[ies] the circumstances proved," "assum[ing] that the [fact-finder] resolved any factual disputes in a manner that is consistent with the . . . verdict." *Id.* Second, we "examine independently the reasonableness of the inferences that might be drawn from the circumstances proved," and then "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). The evidence is considered as a whole, not each piece in isolation. *State v. Andersen*, 784 N.W.2d 320, 332 (Minn. 2010).

A person is guilty of first-degree criminal sexual conduct when he "engages in sexual penetration with another person, or in sexual contact with a person under 13 years of age as defined in section 609.341, subdivision 11, paragraph (c) . . . if . . . the complainant is under 13 years of age and the actor is more than 36 months older than the complainant." Minn. Stat. § 609.342, subd. 1(a) (2012).

> "Sexual contact with a person under 13" means the intentional touching of the complainant's bare genitals or anal opening by the actor's bare genitals or anal opening with sexual or aggressive intent or the touching by the complainant's bare genitals or anal opening of the actor's or another's bare genitals or anal opening with sexual or aggressive intent.

4

Minn. Stat. § 609.341, subd. 11(c) (2012). A person is guilty of attempted first-degree criminal sexual conduct when he, "with intent to commit [the] crime, does an act which is a substantial step toward, and more than preparation for, the commission of the crime." Minn. Stat. § 609.17, subd. 1 (2012).

Escobar-Chilel does not challenge that he committed a substantial step toward the commission of an offense; he challenges the specific offense of which he was found guilty. Escobar-Chilel claims that the evidence proved that he was guilty of the lesser offense of attempted second-degree criminal sexual conduct. A person is guilty of second-degree criminal sexual conduct when he "engages in sexual contact with another person [and] the complainant is under 13 years of age and the actor is more than 36 months older than the complainant." Minn. Stat. § 609.343, subd. 1(a) (2012).

Escobar-Chilel asserts that the evidence supports a finding that he attempted to engage in sexual contact with the victim, but not that he attempted to sexually penetrate her. He asserts that he "could have been attempting to touch [the victim's] intimate parts with his genitalia or attempting to have [the victim] touch his genitalia, which would make him guilty of second-degree criminal sexual conduct but not first-degree."

But with this argument, Escobar-Chilel admits that the evidence supports his conviction because a person is guilty of first-degree criminal sexual conduct when he "engages in sexual penetration with another person, *or in sexual contact with a person under 13 years of age as defined in section 609.341, subdivision 11, paragraph (c)*." Minn. Stat. § 609.342, subd. 1(a) (emphasis added). Sexual contact with a person under 13 years of age includes the "touching of the complainant's bare genitals . . . by the

5

actor's bare genitals . . . or the touching by the complainant's bare genitals . . . of the actor's . . . bare genitals . . . with sexual . . . intent." Minn. Stat. § 609.341, subd. 11(c).

The victim was four years old when Escobar-Chilel was found with her. The victim was naked from the waist down, and Escobar-Chilel was pulling his pants down. Thus, even if Escobar-Chilel did not attempt to penetrate the victim, his attempt to engage in sexual contact constituted first-degree criminal sexual conduct.

But the evidence also supports the district court's conclusion that Escobar-Chilel attempted to sexually penetrate the victim. The evidence showed that: (1) Escobar-Chilel was in a closet with the four-year-old victim; (2) the victim was naked from the waist down; (3) Escobar-Chilel was in the process of pulling his pants down; (4) when discovered by M.R-V., Escobar-Chilel's face got red; (5) when M.R-V. asked Escobar-Chilel what he was doing, he said that nothing happened and walked away quickly; (6) Escobar-Chilel admitted that if M.R-V. had not opened the closet door, he was about to "create a bigger mistake"; and (7) when asked if he was going to "have sex with [the girl]," Escobar-Chilel replied: "I think so[,] yeah."

These circumstances, based on the assumption that factual disputes were resolved in a manner consistent with the verdict, prove Escobar-Chilel's guilt because the reasonable inference drawn from these circumstances is that Escobar-Chilel intended to sexually penetrate the victim had her mother not found her.

### Pro se arguments

The state contends that Escobar-Chilel's pro se supplemental brief is untimely. "[A] supplemental brief must be filed within 30 days after the State Public Defender's

office files its initial brief." Minn. R. Crim. P. 28.02, subd. 5(17). The initial brief was filed on July 27, 2015. The supplemental brief was filed 30 days later on August 26, 2015. It is timely.

Escobar-Chilel first argues that he did not understand what was said during the interview on March 5 because he does not understand some words in Spanish. However, Escobar-Chilel was asked if he needed a Spanish interpreter, and he said yes; he did not ask for an interpreter other than a Spanish interpreter, and he has spoken Spanish since he was eight years old. He also admitted that despite a dialect difference, he understood the interpreter and understood the legal words. There is no indication in the record that Escobar-Chilel did not understand what was being said during the March 5 interview.

Escobar-Chilel next argues that he did not understand his rights and asserts that he should have spoken with an attorney. Escobar-Chilel moved to suppress his statement, claiming that it was not voluntary. The district court denied the motion, finding that: (1) a Spanish interpreter was present and Escobar-Chilel indicated that he understood her; (2) the officer read the *Miranda* advisory, which were interpreted to Escobar-Chilel; and (3) Escobar-Chilel indicated that he understood his rights and wanted to speak with the officer, knew why the officer wanted to talk to him, and never asked for an attorney or exercised his right to remain silent. Based on the record, the district court did not err in concluding that Escobar-Chilel's statement was voluntary.

Finally, Escobar-Chilel challenges the credibility of M.R-V. and J.J., asserting that there were inconsistencies in their reports. The district court heard testimony regarding slight inconsistencies in M.R-V.'s initial report and her follow-up interview.

7

Escobar-Chilel also cross-examined M.R-V. and J.J. about these inconsistencies. The district court did not find "the inconsistencies between the testimony of the witnesses to be significant" because there was a language difference between the couple and law enforcement, the situation was chaotic, and the couple was upset. The district court resolved any conflict in the evidence. *See Francis v. State*, 729 N.W.2d 584, 589 (Minn. 2007) (stating that the assessment of a witness's credibility is exclusively the province of the fact-finder). Escobar-Chilel's pro se claims have no merit.

**Affirmed.**