*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1736**

State of Minnesota,
Respondent,

vs.

David Michael Rindahl, Jr.,
Appellant.

**Filed February 1, 2016
Affirmed
Johnson, Judge**

Goodhue County District Court
File No. 25-CR-12-2660

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Stephen Betcher, Goodhue County Attorney, Red Wing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Harten, Judge.*

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**JOHNSON**, Judge

A Goodhue County jury found David Michael Rindahl guilty of malicious punishment of a child resulting in great bodily harm, based on evidence that his four-month-old daughter sustained a non-accidental traumatic head injury while in his care. Rindahl challenges the sufficiency of the evidence. We affirm.

**FACTS**

In October 2012, David Rindahl and his wife, K.K., were living together with their two daughters, K.R. and L.R., in Red Wing. K.R. was four months old at the time, and L.R. was two years old. In the afternoon and evening of Sunday, October 28, 2012, Rindahl was at home, caring for the two girls, while K.K. was at work, only a few blocks away. K.K. worked for the emergency room of a nearby hospital as an administrative assistant; her primary duties were registering patients for emergency and urgent care.

At approximately 7:30 that evening, K.K. received a telephone call from Rindahl, who frantically told her that he thought K.R. was having a seizure. Rindahl brought both girls to the emergency room a few minutes later. K.R. had several seizures at the hospital that evening and was airlifted to the Mayo Clinic in Rochester. She was diagnosed with a subdural hematoma. She showed no external signs of injury and had no detectable injury to her neck or to other bones. She underwent surgery several days later to reduce the hematoma. After being discharged, K.R.'s seizures have recurred periodically.

Two days after the incident, Rindahl was interviewed by Red Wing police officers for approximately two hours. Two days after the interrogation, the state charged Rindahl

with five offenses: (1) first-degree assault, in violation of Minn. Stat. § 609.221, subd. 1 (2012); (2) malicious punishment of a child resulting in great bodily harm, in violation of Minn. Stat. § 609.377, subds. 1, 6 (2012); (3) third-degree assault of a person under the age of four, in violation of Minn. Stat. § 609.223, subd. 3 (2012); (4) malicious punishment of a child under the age of four, in violation of Minn. Stat. § 609.377, subds. 1, 4; and (5) malicious punishment of a child resulting in substantial bodily harm, in violation of Minn. Stat. § 609.377, subds. 1, 5.

The case was tried to a jury in April 2014. The state presented eleven witnesses, including five physicians. The state's witnesses included K.K., K.R.'s maternal grandfather, K.R.'s daycare provider, a Goodhue County social worker, and the two Red Wing police officers who interrogated Rindahl. The state also introduced extensive excerpts of a video-recording of the interrogation of Rindahl, which were played for the jury.

The state presented a considerable amount of medical evidence. Dr. Margaret Decker, a pediatrician who examined K.R. at the Red Wing emergency room, testified that K.R. sustained a brain injury by either shaking or impact, and that K.R.'s physical condition did not allow her to rule out one cause or the other. Dr. Daniel Broughton, a pediatrician specializing in child abuse at the Mayo Clinic in Rochester who examined K.R. upon her arrival there and cared for her thereafter, testified that, based on blood tests, imaging, and his examination, no explanation remained for K.R.'s injury except a violent shaking. Dr. Broughton specifically testified that Rindahl's report of tripping over a cat while carrying K.R. three weeks earlier did not account for K.R.'s condition. Dr. Peter Kalina, a

radiologist at the Mayo Clinic in Rochester, testified that K.R. sustained a permanent, irreparable loss of brain tissue as a result of the subdural hematoma, though he did not testify about the cause of her injury. Dr. Nicholas Wetjen, a pediatric neurosurgeon at the Mayo Clinic in Rochester who performed surgery to address K.R.'s subdural hematoma, testified that K.R.'s condition is consistent with a violent shaking injury but inconsistent with any other explanation.

The state also called an expert witness, Dr. Mark Hudson, a pediatrician specializing in the diagnosis and evaluation of suspected child abuse. Dr. Hudson testified that the relevant medical records indicate that abusive head trauma was the cause of K.R.'s injury. He also testified that medical records suggesting "new on old blood" or "acute on chronic blood" may have been incorrect or misinterpreted as indicating more than one incident of abuse. Dr. Hudson testified that the evidence is inconclusive as to whether K.R. was injured only once or more than once.

Rindahl testified in his own defense. He maintained that he never violently shook K.R. but, rather, that he merely "jostle[d] her from side to side" shortly before she had her first seizure. Rindahl also called an expert witness, Dr. John Plunkett, a specialist in pathology. Dr. Plunkett testified that, based on his review of K.R.'s medical records and other case-related materials, K.R.'s injury was the result of an expanding chronic subdural hematoma. Dr. Plunkett also testified that the lack of any skeletal injuries disproved a diagnosis related to shaking.

4

The jury found Rindahl guilty on counts 2, 4, and 5, but not guilty on counts 1 and 3. The district court imposed a sentence of 57 months of imprisonment on count 2. Rindahl appeals.

**D E C I S I O N**

Rindahl argues that the evidence is insufficient to support the jury's verdict that he is guilty of malicious punishment of a child resulting in great bodily harm. The statute governing the offense of conviction makes it a crime for "[a] parent, legal guardian, or caretaker who, by an intentional act or a series of intentional acts with respect to a child, evidences unreasonable force or cruel discipline that is excessive under the circumstances." Minn. Stat. § 609.377, subd. 1. Rindahl contends that "the state failed to prove beyond a reasonable doubt that [he] committed an intentional act that evidenced unreasonable force or cruel discipline."

Ordinarily, when reviewing the sufficiency of the evidence, we undertake "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient" to support the conviction. *State v. Ortega*, 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). We seek to "determine whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted." *State v. Salyers*, 858 N.W.2d 156, 160 (Minn. 2015) (quotations omitted). We "assume that the factfinder disbelieved any testimony conflicting with [the] verdict." *State v. Palmer*, 803 N.W.2d 727, 733 (Minn. 2011) (quotation omitted). "We will not disturb the verdict if the jury, acting with due regard for

5

the presumption of innocence" and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of the crime charged. *Bernhardt v. State*, 684 N.W.2d 465, 476-77 (Minn. 2004) (quotation omitted).

If circumstantial evidence is necessary to support a conviction, however, we apply a different standard of review. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). In such a case, "The first step is to identify the circumstances proved" and "assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict." *Id.* (citing *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010)). The second step is to "examine independently the reasonableness of the inferences that might be drawn from the circumstances proved," and then "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). We must consider the evidence as a whole and not examine each piece in isolation. *Andersen*, 784 N.W.2d at 332.

To determine whether to apply the ordinary standard of review or the circumstantial-evidence standard of review, we first ask whether the state's direct evidence is sufficient to prove each element of the charged offense. *See State v. Flowers*, 788 N.W.2d 120, 133 n.2 (Minn. 2010). If the state's direct evidence, by itself, is sufficient to prove each element of the charged offense, we apply the ordinary standard of review; but if the state's direct evidence, by itself, is insufficient to prove each element of the charged offense, and the state also relies on circumstantial evidence to prove one or more elements, we apply the circumstantial-evidence standard of review. *See State v. Porte*, 832 N.W.2d 303, 309-10 (Minn. App. 2013) (applying circumstantial-evidence standard of review because state

6

introduced insufficient direct evidence); *see also Salyers*, 858 N.W.2d at 160-61 (applying ordinary standard of review because state introduced sufficient direct evidence); *State v. Sam*, 859 N.W.2d 825, 832-33 (Minn. App. 2015) (applying circumstantial-evidence standard of review because state did not introduce direct evidence). Direct evidence is "'evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption'"; circumstantial evidence is "'evidence based on inference and not on personal knowledge or observation.'" *Bernhardt*, 684 N.W.2d at 477 n.11 (alterations omitted) (quoting *Black's Law Dictionary* 595-96 (8th ed. 2004)).

In this case, Rindahl contends that the circumstantial-evidence standard of review applies and that the circumstantial evidence is insufficient. In response, the state contends that the ordinary standard of review applies and that the direct evidence is sufficient to sustain the conviction. The state contends alternatively that, even if the direct evidence is insufficient, the combination of direct evidence and circumstantial evidence is sufficient to support the conviction. The state's theory is that Rindahl committed the criminal act or acts on October 28, 2012, while inside the residence that he shared with K.K. and their children. The only persons known to be present inside the residence at that time were Rindahl, K.R., and L.R. Of these three persons, only Rindahl testified, though the state also introduced a video-recording with statements that Rindahl made during the police interrogation.

Rindahl's testimony and pre-trial statements are the only evidence in the record that are "'based on personal knowledge or observation" and capable of "'prov[ing] a fact without inference or presumption.'" *Id.* (quoting *Black's Law Dictionary* 596 (8th ed.

7

2004)).  But the facts proved by Rindahl's testimony and pre-trial statements, by themselves, do not validate the state's theory.  During the interrogation, Rindahl stated, in various ways at various points in time, that he held K.R. and that he moved her in some manner, but he maintained that his movements were not rough or violent and that he was not angry or upset.  At trial, Rindahl described his conduct in similar ways and denied exerting unreasonable force on K.R. or engaging in any act that was unreasonable under the circumstances.  In short, Rindahl's version of the events of October 28, 2012, does not establish each element of the offense.  Accordingly, the conviction necessarily depends on circumstantial evidence, *i.e.*, "'evidence based on inference and not on personal knowledge or observation.'"  *Id.* (alteration omitted) (quoting *Black's Law Dictionary* 595 (8th ed. 2004)).  Thus, we must apply the circumstantial-evidence test.

The first step of the circumstantial-evidence test is to identify the circumstances proved, assuming that the jury resolved factual disputes in a manner that is consistent with its verdict.  *Moore,* 846 N.W.2d at 88.  Both the state and Rindahl identify a number of circumstances proved.  In our view, the essential circumstances proved are the following: (1) Rindahl is K.R.'s father; (2) Rindahl was caring for K.R. on October 28, 2012, when she was four months old; (3) in the past, Rindahl had experienced stress while caring for K.R., which led him and K.K. to establish a plan for obtaining assistance; (4) K.R. was in a normal condition when K.K. left for work at approximately 2:00 p.m.; (5) Rindahl held K.R. and moved her around in some manner while caring for her; (6) K.R. experienced a seizure in the early evening; (7) Rindahl brought K.R. to a hospital emergency room at approximately 7:30 p.m.; (8) K.R. was diagnosed with a subdural hematoma, caused by an

acute head injury and not by any preexisting condition; (9) K.R.'s subdural hematoma was not caused by an external impact to the head; and (10) K.R.'s injuries were consistent with violent shaking.

The second step of the circumstantial-evidence test is to independently examine the reasonableness of the inferences that the jury might have drawn from the circumstances proved and "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). The circumstances proved are consistent with guilt because they allow a reasonable juror to infer that Rindahl caused K.R.'s injuries by violently shaking her, which would constitute "unreasonable force or cruel discipline that is excessive under the circumstances." *See* Minn. Stat. § 609.377, subd. 1. This conclusion is supported by the video-recording of the interrogation of Rindahl, which, though not completely incriminating, tends to support the inference that Rindahl caused K.R.'s injuries. The key question is whether the circumstances proved are "inconsistent with any rational hypothesis except that of guilt." *See Moore,* 846 N.W.2d at 88 (quotations omitted). On appeal, Rindahl identifies three ways in which the circumstances proved are consistent with his being not guilty.

First, Rindahl suggests that K.R.'s injury may have been caused by "something other than an intentional act committed by Rindahl," such as an accident. Rindahl notes that K.R. did not have any injuries to her neck and thorax, which would have corroborated the state's theory that Rindahl violently shook her. But the state's expert, Dr. Hudson, testified that a child's subdural hematoma can occur without a simultaneous injury to the

9

neck or thorax and, furthermore, that it is more common for a subdural hematoma to occur without a simultaneous injury to the neck or thorax. More importantly, Dr. Wetjen, the pediatric neurosurgeon who performed surgery on K.R., testified that K.R.'s condition was consistent with a violent shaking injury but inconsistent with any other explanation. For purposes of our analysis, we assume that the jury believed Dr. Hudson's testimony and Dr. Wetjen's testimony because we must "assume that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict." *Id.* Given the testimony of those witnesses, and given the record as a whole, the circumstances proved by the state's evidence are inconsistent with Rindahl's hypothesis that he is not guilty because K.R. was injured by an unknown cause, other than violent shaking, that did not injure her neck or thorax. *See State v. Hayes*, 831 N.W.2d 546, 552-53 (Minn. 2013) (affirming conviction arising from infant's severe head injury, despite defendant's expert's testimony of possible accidental cause, because circumstantial evidence showed that injuries "were too severe to be the result of a typical household fall"); *State v. Orfi*, 511 N.W.2d 464, 471-72 (Minn. App. 1994) (affirming conviction arising from young child's severe head injury, despite defendant's expert's testimony of possible alternative causes, based on physicians' testimony that child's subdural hematoma was caused by violent shaking), *review denied* (Minn. Mar. 15, 1994).

Second, Rindahl suggests that K.R.'s injury may have been caused by a chronic hematoma, which was preexisting on October 28, 2012. Rindahl relies on medical records created by Dr. Wetjen and Dr. Broughton that refer to a *chronic* subdural hematoma. But Dr. Wetjen testified at trial that K.R. had an *acute* subdural hematoma, and Dr. Broughton

10

testified that, in retrospect, he should have recorded his observations differently. Dr. Hudson testified that the presence of old blood was uncertain and, even if present, was inconclusive as to whether K.R. had sustained an earlier head injury. And again, Dr. Wetjen testified that K.R.'s condition is consistent with a violent shaking injury but inconsistent with any other explanation. We must assume that the jury believed those physicians' testimony. *See Moore*, 846 N.W.2d at 88. Furthermore, Rindahl's theory does not negate the state's theory that Rindahl caused K.R.'s injury on October 28, 2014. Given the testimony of the state's physician witnesses, and given the record as a whole, the circumstances proved by the state's evidence are inconsistent with Rindahl's hypothesis that he is not guilty because K.R. was injured by a chronic subdural hematoma. *See Hayes*, 831 N.W.2d at 552-53; *Orfi*, 511 N.W.2d at 471-72.

Third, Rindahl contends that he had "no history of engaging in assaultive conduct, domestic or otherwise," that he was an "engaged parent," and that he and K.K. had a plan for obtaining assistance when he became overwhelmed. Although such evidence might have a tendency to persuade a jury that Rindahl is not guilty, it is not necessarily inconsistent with guilt. It is not implausible that a person with a history of being a good parent might nonetheless commit the offense of malicious punishment of a child. Thus, these circumstances simply are not inconsistent with the finding of guilt. *See Moore*, 846 N.W.2d at 88.

11

We conclude that the circumstances proved are "consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). Thus, the evidence introduced at trial is sufficient to support the conviction.

**Affirmed.**