**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0771**

State of Minnesota,
Appellant,

vs.

Derek Lawrence Stavish,
Respondent.

**Filed September 2, 2014**
**Reversed and remanded**
**Harten, Judge***

Nicollet County District Court
File No. 52-CR-12-439

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michelle M. Zehnder Fischer, Nicollet County Attorney, James P. Dunn, Assistant County Attorney, St. Peter, Minnesota (for appellant)

Michael S. Gaarder, Pennington & Cherne PLLC, St. Cloud, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Harten, Judge.

**S Y L L A B U S**

When a police officer is responsible for procuring a blood sample from an individual

who has stated that he was the driver of a vehicle involved in a probable criminal vehicular

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

homicide and who has already been transported to a hospital, exigent circumstances exist that justify the police officer's procuring the blood sample without a search warrant.

### O P I N I O N

**HARTEN**, Judge

Appellant State of Minnesota challenges the granting of respondent's motion to suppress the evidence obtained from a blood sample taken from him without a warrant. Because we conclude that the exigent-circumstances exception to the warrant requirement applies to the facts of this case, we reverse the grant of the motion to suppress and remand to the district court for trial.

### FACTS

At about 10:28 p.m. on 18 June 2012, law-enforcement agencies and an ambulance were summoned to the site of a one-vehicle rollover crash in Nicollet County. When they arrived, they saw a truck with numerous beer cans in and around it; a dead body later identified as that of B.L.; and respondent Derek Stavish, who needed medical attention. Respondent said that he had been driving, he was not sure how many people had been in the truck, and he should not have been doing what he was doing. Respondent was then transported by ambulance to a New Ulm hospital about ten miles away, in Brown County.

A state patrol sergeant arrived after the ambulance left. He was instructed to obtain a blood sample from respondent and told that respondent was on his way to the New Ulm hospital in Brown County and might be airlifted to a more distant trauma center.[1] The sergeant drove to the hospital, where he found respondent conscious and receiving care.

---

[1] In fact, respondent remained in the hospital to which he was taken after the crash.

Respondent told the sergeant that two or three other people had been in the truck when it crashed. The sergeant noted that respondent smelled of alcohol and determined that there was probable cause to suspect that respondent had committed criminal vehicular homicide. At 11:18 p.m., the sergeant asked hospital staff to take a blood sample from respondent.

The test of the sample showed respondent's blood-alcohol count (BAC) to be .20. Respondent was charged with three counts of criminal vehicular operation resulting in death, two counts of fourth-degree driving while impaired, one count of reckless driving, and one count of careless driving.

About 10 months later, in April 2013, the Supreme Court released *Missouri v. McNeely*, 133 S. Ct. 1552 (2013) (holding that metabolization of alcohol in the bloodstream is not per se an exigent circumstance that justifies the warrantless taking of blood samples and that exigency must be determined based on the totality of the circumstances). Respondent then moved to suppress the evidence of his BAC, alleging that the blood sample had been taken without a warrant in violation of *McNeely*.

The district court suppressed the test result on the ground that the exigent-circumstances exception to the warrant requirement did not apply. The state challenges the suppression.[2]

---

[2] The state also challenges the district court's alternative ground for suppressing the evidence, i.e., its determination that the good-faith exception to the warrant requirement does not apply because Minnesota has not recognized that exception. *See State v. Brooks*, 838 N.W.2d 563, 575 (Minn. 2013) (Stras, J., concurring) (noting that the Minnesota Supreme Court "has yet to adopt the good-faith exception"). Because we conclude that the exigent-circumstances exception to the warrant requirement applied, we do not reach the issue of whether the sergeant was relying in good faith on existing Minnesota law when he did not seek a warrant.

**ISSUE**

Did the exigent-circumstances exception apply?

**ANALYSIS**

When the state appeals a pretrial evidentiary suppression order, it must first "clearly and unequivocally show . . . that the [district] court's order will have a critical impact on the state's ability to prosecute the defendant successfully . . . ." *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (quotation omitted). The parties agree that the district court's suppression of the BAC evidence had a critical impact on the state's ability to prosecute respondent. "[W]hen reviewing a pre-trial order suppressing evidence where the facts are not in dispute and the [district] court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed." *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992).

"[I]n drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *McNeely*, 133 S. Ct. at 1568. The district court relied on this language and determined that "the [s]tate [had] not carried its burden of proving the existence of exigent circumstances that justified [the sergeant's] ordering the blood draw [from respondent] without a warrant." But *McNeely* does not hold that "the natural dissipation of alcohol in the bloodstream" is *never* an exigent circumstance; it rather holds "that exigency in [the drunk-driving] context must be determined case by case based on the totality of the circumstances." *Id*. at 1556.

Moreover, *McNeely* is factually distinguishable. It did not involve a probable criminal vehicular homicide or any damage to persons or property. "[U]nquestionably a routine DWI case," *McNeely* concerned a driver who was stopped, appeared intoxicated, admitted consuming alcohol, and refused to provide a breath sample or a blood sample; "no factors other than the natural dissipation of blood-alcohol suggested that there was an emergency." *Id.* at 1556-57. But "the [s]tate [sought] a *per se* rule for blood testing in drunk-driving cases . . . contend[ing] that . . . exigent circumstances will necessarily exist because BAC evidence is inherently evanescent." *Id.* at 1560. The Supreme Court declined to establish a per se rule or to "depart from careful case-by-case assessment of exigency," noting that "some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." *Id.* at 1561.

Here, the sergeant was faced with a probable criminal vehicular homicide in one county, a probable perpetrator in need of medical treatment who had been transported to a hospital in another county, and the possibility that the perpetrator would be airlifted to a trauma center in a third county. Because BAC must be measured within two hours of the time of driving, *see* Minn. Stat. § 169A.20, subd. 1(5) (2012), and because the medical treatment respondent would receive at the hospital could affect or invalidate his BAC, the sergeant was under time pressure to obtain respondent's blood sample. He was finally able to do so at 11:18 p.m., 50 minutes after law enforcement was first notified of the accident, and thus more than 50 minutes after the time respondent was driving.

5

Moreover, the sergeant was attempting to obtain evidence essential to a probable criminal vehicular homicide charge, not merely a DWI charge. "[I]f a peace officer has probable cause to believe that the [driver] has violated section 609.21 (criminal vehicular homicide . . .) a test may be required and obtained despite the [driver's] refusal." Minn. Stat. § 169A.52, subd. 1 (2012). "[A]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S. Ct. 2091, 2099 (1984). The gravity of the DWI in *McNeely* was far less than the gravity of the criminal vehicular homicide here. Unlike the situation in *McNeely*, several significant factors together with the inherent evanescence of BAC evidence indicate that exigent circumstances existed to procure a sample of respondent's blood without a warrant.

## DECISION

Because other significant factors and the inherent evanescence of BAC evidence indicate that exigent circumstances existed for the warrantless taking of respondent's blood sample, we reverse the suppression of the BAC evidence and remand for trial.

**Reversed and remanded.**