*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0689**

State of Minnesota,
Respondent,

vs.

Jason David Fredrickson,
Appellant

**Filed May 4, 2015
Affirmed
Worke, Judge**

Mower County District Court
File No. 50-CR-13-349

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Kristen Nelson, Mower County Attorney, Austin, Minnesota (for respondent)

Eric J. Nelson, Douglas V. Hazelton, Halberg Criminal Defense, Bloomington, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Worke, Judge.

## U N P U B L I S H E D   O P I N I O N

**WORKE**, Judge

Appellant challenges his criminal-vehicular-homicide convictions, arguing that

(1) the district court erred by declining to suppress his blood-test results when his blood

was drawn without a warrant; (2) the evidence that he was the driver was insufficient; (3) the district court abused its discretion by admitting evidence; (4) the district court erred by denying his motion for a judgment of acquittal; and (5) the district court abused its discretion by imposing consecutive sentences. We affirm.

## FACTS

On February 24, 2012, husband and wife, L.U. and S.U., spent the evening with J.M. and his wife, M.M., and appellant Jason David Fredrickson and his wife. S.U. agreed to serve as designated driver and drove the group to a restaurant where they consumed approximately four rounds of drinks. The group returned to L.U. and S.U.'s home around midnight.

Back at the residence the men stayed in the garage. As the women walked into the house, Fredrickson told S.U. that "he was going to take [J.M.] for a ride into town." She told him that he was not, and he said that he was kidding. Around 1:30 a.m., the women saw a vehicle leave the driveway. They attempted to contact their husbands. When they received no response, they left to find them. The women reached a point where they saw emergency lights and the road blocked. M.M. then received a call that J.M. had been in an accident.

On February 25, at approximately 2:00 a.m., Austin police officers, the Mower County Sheriff's Department, and the Minnesota State Patrol responded to a call of a single-vehicle accident. The vehicle registered to Fredrickson's wife had been moving at 120 miles per hour and struck objects in its path before its three occupants were ejected. L.U. was found deceased behind the vehicle. Fredrickson was found by the front

passenger's corner of the vehicle, and J.M. was found on the same side of the vehicle, toward its rear. Fredrickson and J.M. were transported to the hospital. J.M. died at the hospital. Fredrickson was transported to another hospital 40 miles away.

At approximately 3:00 a.m., officers learned that alcohol consumption may have contributed to the accident. Around 3:45 a.m., State Trooper Garrett Bondhus was sent to obtain Fredrickson's blood sample. He did not obtain a warrant because procedure at the time involving a criminal vehicular homicide was to obtain the driver's blood sample without a warrant. Fredrickson was unconscious and taken to the critical-care unit where the trooper was not immediately allowed access to him. A phlebotomist arrived about 25-30 minutes later. Because of the difficulties the phlebotomist experienced in obtaining a sample, Fredrickson's blood was not drawn until 5:18 a.m. The test result indicated an alcohol concentration (AC) of .06. Retrograde extrapolation conducted on the sample determined that at 3:21 a.m., Fredrickson's AC would have measured between .081 and .111. Fredrickson moved to suppress the blood-test evidence because his blood was drawn without a warrant. The district court concluded that the totality of the circumstances established an exigency making the warrantless blood draw reasonable and denied the motion.

At Fredrickson's jury trial, process server Joel Solomonson testified that he was hired to serve Fredrickson and his wife with a summons and complaint in a wrongful-death action. Solomonson personally served Fredrickson. Solomonson told Fredrickson that it appeared that it might concern a matter involving a car accident and that

3

Fredrickson's wife was driving. Fredrickson replied that he was driving, then paused and said "well, we really don't know who was driving."

Sergeant Mark Inglett reconstructed the accident. He testified that the crash was significant and looked like an explosion. Sergeant Inglett saw no indication that the vehicle rolled. He believed that the damage to the vehicle and the damage to the utility pole that it hit indicated that the vehicle was airborne and rotated clockwise.

Sergeant Inglett believed that L.U. was the left-rear passenger based on his final resting spot. He stated that a body ejected from a vehicle will travel in a straight line. He believed that L.U. was ejected when the vehicle hit the tree; his body was found to have taken a relatively straight path. Fredrickson and J.M. had significant injuries to their left sides, which was consistent with them being in the front of the vehicle and being thrown to the left when the vehicle struck the tree. Fredrickson's left-side injuries were far more severe than J.M.'s. Sergeant Inglett testified that because the vehicle moved clockwise, the passengers, none wearing a seatbelt, moved forward and to the right. The first person ejected would be the right-front passenger because the driver would have to come out from behind the steering wheel, over the center console, and over the top of the passenger in order to be ejected first. Inglett believed that J.M. was the right-front passenger because he was found toward the rear of the vehicle.

A brown shoe was found near the brake pedal. The shoe was initially inaccessible because the "dash was crushed around it." Fredrickson's clothing from the hospital included only one brown shoe. Sergeant Inglett testified that the brown shoe was found "kind of up under the brake pedal" and encapsulated by the car. He testified that it is

4

common for drivers to lose a shoe because of the impact. Sergeant Inglett also noted that the driver-side airbag deployed. The Bureau of Criminal Apprehension (BCA) determined that a pattern on Fredrickson's shirt could have been caused by the airbag. Additionally, Fredrickson's right ankle was fractured, which is a common injury to a driver because his right foot is on the brake pedal as his muscle tenses, or his foot gets entangled between the brake pedal and the accelerator.

Sergeant Paul Skoglund assisted in the reconstruction and also concluded that Fredrickson was the driver. Daniel Lofgren testified as the defense expert for accident reconstruction. He believed that the vehicle moved in a counterclockwise direction and did a barrel roll. Because the vehicle rolled, he could not conclude who was where in the vehicle and could not eliminate Fredrickson as the driver.

The jury found Fredrickson guilty of two counts of criminal vehicular homicide—alcohol concentration .08 or more, and two counts of criminal vehicular homicide—negligent operation of a vehicle under the influence of alcohol. The jury found him not guilty of criminal vehicular homicide—grossly negligent operation of a vehicle. Fredrickson moved for judgment of acquittal, arguing that the evidence was insufficient that he was the driver and the verdicts were legally inconsistent. The district court denied the motion. Fredrickson then moved for a downward dispositional departure or for concurrent sentences. The district court stated:

> [T]here is no responsibility being taken by [Fredrickson] for these deaths. Remorse is comprised of two separate factors: One of which is, obviously, grief, and I do not doubt . . . that there is a great deal of grief that has been suffered by . . . Fredrickson, both for himself and for the victims . . . .

5

However, the second component of remorse is responsibility . . . . I can at least give some service to counsel's statement that lawyering up and instructions from lawyers may have prevented contact. That explanation does not in any way eliminate the total incongruity of a man who claims that he cannot remember anything about what happened, but is prepared in a civil deposition to accuse one of the decedents of being the driver. He is also prepared in the course of the presentence investigation to make two statements which, I guess if I were part of the victims' family or the extended group, I would find just extremely hurtful. Statements that I took note of: In describing the offense, Was in my wife's car with friends, one of them was driving, and it crashed. Second statement in the presentence investigation: What lesson did you learn from this incident? Don't let someone else use your car. That is not taking responsibility.

Regarding consecutive sentences, the court stated:

This is a tragedy and there is not any good result, but the debt that is owed is to two individuals, two families . . . . I don't have any belief whatsoever that Fredrickson is going to be a repeat criminal; although, I have some serious concerns with regard to his attitude toward chemical dependency and his willingness to blame others . . . . It is a series of bad decisions that resulted in two deaths. The [c]ourt never takes pleasure in issuing a sentence that radically changes the life of the defendant and the defendant's family, but I am compelled to do so in this case.

The district court sentenced Fredrickson to two 48-month sentences, served consecutively for 96 months in prison. This appeal follows.

**D E C I S I O N**

*Warrantless blood test*

Fredrickson argues that the district court erred in failing to suppress his blood test because his blood was drawn without a warrant. When reviewing a pretrial ruling on the suppression of evidence, when the facts are not in dispute and the district court's decision

6

is a question of law, we independently review the facts and determine as a matter of law if suppression is required. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992).

Under the Fourth Amendment, a warrantless search is reasonable only if it falls within a recognized exception to the warrant requirement. *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013). The state bears the burden of establishing the existence of an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001).

The presence of exigent circumstances is a recognized exception to the warrant requirement. *McNeely*, 133 S. Ct. at 1558. "'[E]xigency in the drunk-driving context must be determined case by case based on the totality of the circumstances.'" *State v. Stavish*, 852 N.W.2d 906, 908 (Minn. App. 2014) (brackets omitted) (quoting *McNeely*, 133 S. Ct. at 1556), *review granted* (Minn. Nov. 18, 2014). While the natural dissipation of alcohol in the bloodstream alone is not an exigent circumstance, it is a factor considered in a determination of exigency. *McNeely*, 133 S. Ct. at 1561. Other relevant factors include the suspect's need for medical care, transport across county lines, and time pressure created by the need to take action within two hours of the time of driving. *Stavish*, 852 N.W.2d at 908-09. An additional "important factor" that contributes to an exigency is "the gravity of the underlying offense." *Id.* at 909.

In *Schmerber v. California*, the United States Supreme Court considered whether a driver's Fourth Amendment rights were violated because of a warrantless blood draw. 384 U.S. 757, 766-72, 86 S. Ct. 1826, 1833-36 (1966). Schmerber got into an accident causing his and his companion's injuries. *Id.* at 758 n.2, 86 S. Ct. at 1829 n.2. At the hospital, Schmerber's blood was drawn for testing, which revealed that he was

7

intoxicated. *Id.* at 758-59, 86 S. Ct. at 1829. Schmerber argued that the blood draw violated his right to be free from unreasonable searches and seizures under the Fourth Amendment. *Id.* at 759, 86 S. Ct. at 1829. The Court held that under the circumstances, the police officer "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant . . . threatened the destruction of evidence." *Id.* at 770, 86 S. Ct. at 1835 (quotation omitted).

In *Stavish*, police officers responded to a single-vehicle accident at 10:28 p.m. 852 N.W.2d at 907. Officers found beer cans in and around the vehicle, a deceased individual, and Stavish, who needed medical attention. *Id.* Stavish was transported ten miles to a hospital. *Id.* The officer instructed to obtain Stavish's blood sample learned that Stavish might be airlifted to another hospital. *Id.* When the officer arrived at the hospital, Stavish was conscious and receiving care. *Id.* Stavish's blood was drawn at 11:18 p.m., his AC measured .20. *Id.*

Among other charges, the state charged Stavish with criminal vehicular operation. *Id.* The district court granted Stavish's motion to suppress the blood-test result. *Id.* But this court reversed and remanded after concluding that the totality of the circumstances showed that exigent circumstances justified the warrantless search. *Id.* at 909. This court relied on the following circumstances: (1) the criminal-vehicular-homicide charge; (2) Stavish's need for medical treatment; (3) Stavish's transport to a hospital in another county and the possibility that he might be airlifted to a third county; (4) the time pressure to measure Stavish's AC; and (5) the possibility that medical treatment could affect or invalidate Stavish's AC. *Id.* at 908-09.

Fredrickson argues that the state failed to establish that exigent circumstances justified the warrantless blood draw. But the district court determined that a warrant was not required because: (1) the time of the accident, 2:00 a.m., and the limited availability for magistrate review; (2) the coordination of three groups of law enforcement; (3) the need for prompt accident-scene investigation, which delayed consolidation of evidence; (4) lack of knowledge about alcohol consumption for a significant amount of time; (5) the unconscious and critical condition of Fredrickson; (6) the transport of Fredrickson to another hospital; (7) the medical difficulties associated with obtaining Fredrickson's blood; and (8) the dissipation of alcohol in Fredrickson's blood. The record supports the district court's findings, which support the conclusion that the totality of the circumstances established that an exigency made the warrantless blood draw objectively reasonable.

The gravity of the charge, the need for medical treatment, and the transport to another hospital for treatment are similar to *Stavish*. But unlike *Stavish*, in which officers immediately saw beer cans in and around the vehicle, the officers here were not immediately aware that alcohol consumption contributed to the accident. Thus, the timeframe in which to obtain a sample was even more limited. Fredrickson argues that time constraints did not create an exigency because the blood draw occurred outside of the two-hour window. But the phlebotomist encountered difficulties because of Fredrickson's condition; therefore, it was not for lack of trying that Fredrickson's blood was not drawn within two hours of driving. Also unlike *Stavish*, Fredrickson was unconscious and in critical condition. A trooper testified that it would have been difficult

9

to obtain a warrant because he would have had to leave the hospital, contact an on-call prosecutor, get approval for a warrant, draw up the warrant, locate a judge to sign the warrant, and return to the hospital and serve the warrant. Medical staff could have taken Fredrickson to the operating room at any time, at which point the trooper would have lost contact until treatment was completed. Based on the trooper's experience, access to an individual is generally lost once he or she is taken to the operating room. On this record, we conclude that the district court did not err in declining to suppress the blood-test evidence.

***Sufficiency of the evidence***

Fredrickson next argues that the evidence was insufficient to establish that he was the driver. "Whe[n] there is a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the verdict to determine if the evidence was sufficient to permit the jury to reach the verdict it did." *State v. Ford*, 539 N.W.2d 214, 225 (Minn. 1995). We assume that the jury believed the state's witnesses and disbelieved contrary evidence. *State v. Huss*, 506 N.W.2d 290, 292 (Minn. 1993).

If a jury considered circumstantial evidence, this court applies a heightened standard of review. *State v. Porte*, 832 N.W.2d 303, 309 (Minn. App. 2013). This standard includes a two-step analysis to determine whether the evidence was sufficient to support the conviction. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014). First, this court "identif[ies] the circumstances proved." *Id.* Then we "examine independently the reasonableness of the inferences that might be drawn from the circumstances proved," and "determine whether the circumstances proved are consistent with guilt and

10

inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted). The evidence is considered as a whole, not each piece in isolation. *State v. Andersen*, 784 N.W.2d 320, 332 (Minn. 2010).

It is not this court's role to interpret the evidence, *State v. Stein*, 776 N.W.2d 709, 714 (Minn. 2010), because the jury is in the best position to evaluate the evidence and has already done so. *See Moore*, 846 N.W.2d at 88. Accordingly, when determining the circumstances proved, this court "assume[s] that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict." *Id.* "There may well be testimony on behalf of the defendant as to inconsistent facts and circumstances, not conclusively proved, and which the jury may have a right to and do reject as not proved." *State v. Tscheu*, 758 N.W.2d 849, 858 (Minn. 2008) (quotation omitted).

Viewed in the light most favorable to the verdict, the evidence shows that: (1) the vehicle was registered to Fredrickson's wife; (2) Fredrickson stated that he was going to drive to town; (3) Fredrickson's shoe was found by the brake pedal encapsulated by the vehicle; (4) Fredrickson's injuries, including his fractured ankle and severe left-side injuries, were consistent with him being the driver; (5) two accident reconstructionists opined that Fredrickson was the driver; and (6) the driver-side airbag may have caused the pattern on Fredrickson's shirt. These circumstances proved are inconsistent with any rational hypothesis except that of guilt especially because there is no explanation how Fredrickson's shoe would have gotten to where it was found if he had been a passenger. Additionally, Fredrickson's admission to the process server is direct evidence that he was the driver. The evidence is sufficient to show that Fredrickson was the driver.

11

*Admission of evidence*

Fredrickson argues that the district court abused its discretion by admitting BCA and autopsy reports into evidence. He cites no authority supporting his claim, asserting only that the reports are "analogous to police reports," contain hearsay, and are highly technical, which likely confused the jury. "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

The district court admitted the reports because the individuals who prepared them testified regarding their contents. The district court relied on Minn. Stat. § 634.15, subd. 1 (2010) for the admission of the BCA reports. Section 634.15 relates to the admission into evidence of "certain certificates of analysis and blood sample reports." Under subdivision 1, a certificate of analysis and blood sample report "shall be admissible in evidence" "if it is prepared and attested by the person performing the laboratory analysis or examination in any laboratory operated by the [BCA]." Minn. Stat. § 634.15, subd. 1. The district court did not abuse its discretion by admitting the BCA reports.

Generally, testimonial statements are not admissible when the witnesses do not testify. *See State v. Bobo*, 770 N.W.2d 129, 143 (Minn. 2009). Our supreme court has not determined whether an autopsy report is testimonial. *Id.* But here it does not matter because the doctor who performed the autopsies testified. Additionally, this court determined that an autopsy report was admissible as a report kept in the course of regularly conducted business activity under Minn. R. Evid. 803(6), and as a clinical

12

report used by an expert as a basis for forming an opinion about the cause of death under Minn. R. Evid. 703. *State v. Morrison*, 437 N.W.2d 422, 427-28 (Minn. App. 1989), *review denied* (Minn. Apr. 26, 1989). The district court did not abuse its discretion by admitting the autopsy reports.

### *Judgment of acquittal*

#### *Sufficiency of the evidence*

Fredrickson argues that the district court erred by denying his motion for judgment of acquittal. A "defendant may move for . . . a judgment of acquittal on one or more of the charges if the evidence is insufficient to sustain a conviction." Minn. R. Crim. P. 26.03, subd. 18(1)(a). We review the denial of a motion for judgment of acquittal de novo. *State v. McCormick*, 835 N.W.2d 498, 506 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013).

A district court may deny a motion for judgment of acquittal if "the state's evidence, when viewed in the light most favorable to the state, was sufficient to sustain a conviction." *State v. Slaughter*, 691 N.W.2d 70, 75 (Minn. 2005). This is the same standard this court applies when reviewing a challenge to the sufficiency of the evidence. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We have already analyzed this issue and concluded that the evidence was sufficient to show that Fredrickson was the driver. The district court did not err by denying Fredrickson's motion for judgment of acquittal based on insufficient evidence.

*Inconsistent verdicts*

Fredrickson also argues that the jury's verdicts are legally inconsistent. Whether a jury's verdicts are legally inconsistent is a question of law that we review de novo. *State v. Leake*, 699 N.W.2d 312, 325 (Minn. 2005).

"Verdicts are legally inconsistent when proof of the elements of one offense negates a necessary element of another offense." *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996). Generally, a defendant who is found guilty of one count of a multi-count complaint "is not entitled to a new trial or dismissal simply because the jury found him not guilty of the other count, even if the guilty and not guilty verdicts may be said to be logically inconsistent." *State v. Newman*, 408 N.W.2d 894, 898 (Minn. App. 1987), *review denied* (Minn. Aug. 19, 1987). And a "jury in a criminal case has the power of lenity . . . the power to bring in a verdict of not guilty despite the law and the facts." *State v. Perkins*, 353 N.W.2d 557, 561 (Minn. 1984). "[T]he focus is not upon the inconsistency of the acquittals, but upon whether there is sufficient evidence to sustain the guilty verdict." *Nelson v. State*, 407 N.W.2d 729, 731 (Minn. App. 1987), *review denied* (Minn. Aug. 12, 1987).

The jury found Fredrickson guilty of criminal vehicular homicide—causing the death of another as a result of operating a motor vehicle in a negligent manner while under the influence of alcohol. Minn. Stat. § 609.21, subd. 1(2)(i) (2010). The jury found Fredrickson not guilty of criminal vehicular homicide—causing the death of another as a result of operating a motor vehicle in a grossly negligent manner. *Id.*, subd. 1(1) (2010).

14

The elements of the offenses are different. Operating a motor vehicle in a negligent manner means "without using ordinary or reasonable care." 10 *Minnesota Practice*, CRIMJIG 11.63 (2006). Operating a motor vehicle while under the influence of alcohol means "operating the motor vehicle when ability or capacity to operate was impaired by [alcohol]." *Id.* Operating a motor vehicle in a grossly negligent manner means "with very great negligence or without even scant care." *Id.* The jury could have found that Fredrickson was not using ordinary or reasonable care without finding that he was greatly negligent or without "scant care." The jury could have found that alcohol consumption caused Fredrickson to operate the vehicle without using ordinary care without finding that he was operating the vehicle "without even scant care." The verdicts are not inconsistent.

### *Sentence*

Fredrickson argues that the district court abused its discretion by denying his motion for a downward departure. The district court must order the presumptive sentence provided in the sentencing guidelines unless the case involves "substantial and compelling circumstances" to warrant a departure. *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981). We review a district court's decision to deny a departure request for an abuse of discretion. *Id.* at 8. We will reverse imposition of a presumptive sentence only in rare cases. *Id.* at 7.

In determining whether to depart from a presumptive sentence, a district court may consider the individual's amenability to probation. *State v. Heywood*, 338 N.W.2d 243, 244 (Minn. 1983). This involves consideration of factors such as, "the defendant's age,

15

his prior record, his remorse, his cooperation, his attitude while in court, and the support of friends and/or family." *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). The existence of a mitigating factor does not obligate the district court to depart from the presumptive sentence. *State v. Pegel*, 795 N.W.2d 251, 253-54 (Minn. App. 2011).

Fredrickson argued for probation, because he has no criminal history, demonstrated his amenability to probation while on conditional release, and has support from his family and the community. The district court stated that it did not believe that Fredrickson was a criminal, but denied his request because he took "no responsibility." Fredrickson argues that he should not be faulted for not showing remorse because he cannot recall what happened. But as the district court noted, Fredrickson claimed "that he cannot remember anything about what happened, but is prepared in a civil deposition to accuse one of the decedents of being the driver." In his presentence investigation, Fredrickson described the offense as: "Was in my wife's car with friends, one of them was driving, and it crashed." He also stated that the lesson he learned from the incident was: "Don't let someone else use your car." As the district court concluded, a relevant consideration is remorsefulness, which Fredrickson failed to show. Departing is discretionary and the district court was within its discretion in imposing the presumptive sentence.

Fredrickson also argues that the district court abused its discretion by imposing consecutive sentences. Generally, Minnesota law bars multiple sentences when offenses are committed as part of the same behavioral incident. Minn. Stat. § 609.035, subd. 1 (2010). But multiple sentences are permissible if there are multiple victims and the

sentences do not "unfairly exaggerate the criminality of the defendant's conduct." *State v. Wallace*, 327 N.W.2d 85, 87 (Minn. 1982).

Consecutive sentences are not a departure when an offender is convicted of multiple current felony convictions for crimes against different persons. Minn. Sent. Guidelines 2.F.2.b (Supp. 2011); *Wallace*, 327 N.W.2d at 87. "Consecutive sentences are permissive . . . when the presumptive disposition for the current offense(s) is commitment." Minn. Sent. Guidelines 2.F.2. Criminal vehicular homicide is a level-8 offense; a sentence for such an offense is presumptively executed. Guidelines 5 (Supp. 2011). Therefore, two convictions of criminal vehicular homicide are eligible for permissive consecutive sentences.

Fredrickson argues that his sentence unfairly exaggerates the criminality of his offenses. Whether consecutive sentencing exaggerates the criminality of the offense is determined by looking to sentences in similar cases. *State v. Lee*, 491 N.W.2d 895, 902 (Minn. 1992). And the supreme court has upheld consecutive sentences involving criminal vehicular homicide or injury with multiple victims. *See State v. Chaklos*, 528 N.W.2d 225, 226-27 (Minn. 1995) (upholding consecutive sentencing when defendant hit victim's car while intoxicated, killing one woman and severely injuring another). Here, the district court stated that "the debt that is owed is to two individuals, two families." The district court also weighed its concerns about Fredrickson's "attitude toward chemical dependency and his willingness to blame others." The consecutive sentences do not unfairly exaggerate the criminality of the conduct.

**Affirmed.**

17